JUNE *v.* SCHOOL DISTRICT NO. 11, SOUTHFIELD
TOWNSHIP, OAKLAND COUNTY.

1. OATHS—DEFINITION.
    An oath is an external pledge or asseveration made in verification of statements made, or to be made, coupled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party, and to visit him with punishment if they be false.

2. AFFIDAVITS—DEFINITION.
    An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath.

3. SAME—DIFFERENCE BETWEEN AFFIDAVIT AND OATH.

Difference between affidavit and oath is that former consists of a statement of fact which is sworn to as the truth while an oath is a pledge.

4. OATHS—ABSENCE OF JURAT—PRESUMPTIONS.

Absence of a jurat to an oath raises but a rebuttable presumption that the oath was not taken.

5. SAME—JURAT—EVIDENCE OF TAKING.

The actual taking of an oath in the nature of a pledge may be shown by evidence on the hearing where it does not appear by jurat that the oath was administered.

6. SCHOOLS AND SCHOOL DISTRICTS — TEACHERS' CONTRACTS — STATUTES—OATHS.

Statute requiring that teachers in public schools make and subscribe to oath to support Constitutions of State and nation at time of executing contract to teach must be given a reasonable construction and, so construed, *held*, not to require that oath be subscribed simultaneously with execution of the contract nor its inclusion as one of the contractual stipulations, since it is not an agreement made with the other contracting party (Act No. 19, § 22a, Pub. Acts 1931).

7. STATUTES—CONSTRUCTION.

The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature as expressed in the statute.

8. SAME—REASONABLE CONSTRUCTION.

When the words of a statute are not precise and clear, the construction which is most reasonable and best suited to accomplish the objects of the statute should be adopted, and a construction leading to an absurd consequence, hardship or injustice be disregarded if possible.

9. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' CONTRACTS—STATUTORY OATH—PURPOSE.

In requiring that teachers in public schools make and subscribe to oath that they would support the State and Federal Constitutions, at time of execution of contracts to teach, the legislature intended to make certain, and to exact a guaranty, that teachers in public schools should believe in and support the government, to prevent inculcation of subversive, disloyal and unpatriotic principles in the minds of school children and to require readily ascertainable proof in such a way that there could be no evasion (Act No. 19, § 22a, Pub. Acts 1931).

10. Same—Teachers' Contracts—Oath—Jurats.

 Teacher's contract, signed by two officers of the district and teacher, which contained, beneath the signatures to the contract, written form of statutory oath required of teachers which was subscribed to by plaintiff teacher, *held*, not inadmissible in evidence in action for damages for breach of contract because oath was not embodied in contract, where it was administered by an officer of the school district at time contract was executed, although such officer failed to verify oath by his jurat (Act No. 19, § 22a, Pub. Acts 1931).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 12, 1938. (Docket No. 122, Calendar No. 39,838.) Decided April 4, 1938.

Assumpsit by Helen E. June against School District No. 11, Southfield Township, Oakland County, Michigan, to recover money due under a written contract. Judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Preston Allen* and *Percy G. Horler,* for plaintiff.

*Pelton & McGee,* for defendant.

McAllister, J. Plaintiff, a school teacher, brought suit against defendant school district claiming damages resulting from breach of contract. On March 1, 1933, plaintiff entered into a contract with defendant whereby she agreed to teach during the years 1933 to 1936, inclusive, at the rate of $2,300 a year.

She taught from September, 1933, to January, 1935, when she was summarily discharged by the school board which, at that time, was in arrears in payment of her salary in the amount of $1,800.

Defendant claims that the contract is void because it does not comply with provisions of Act No. 19, § 22a, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 7381–1), requiring a teacher's oath to be included

in all such contracts. This statute provides as follows:

"At the time of signing of the said contract and any renewal thereof each teacher shall make and subscribe the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support the Constitution of the United States of America and the Constitution of the State of Michigan, and that I will faithfully discharge the duties of the office of teacher according to the best of my ability,' which shall be embodied in and made a part of said contract. Such contract with oath or affirmation shall be executed in duplicate. One copy thereof shall be filed with the board of education, and the other copy shall be retained by the teacher. The several members of the board of education, school trustees, school commissioners, and superintendents of schools are hereby authorized to administer said oath."

On the trial plaintiff testified that she had taken such oath at the time of signing the contract. The contract was introduced in evidence, subject to its admissibility being ruled upon later by the court. It was signed on the part of the school district by H. J. Kaufmann and C. Winifred Bingman, two officers of the district, and by plaintiff, as the other contracting party. Immediately following the signatures to the contract was the following written statement:

"In compliance with Act No. 19, Pub. Acts 1931, I hereby subscribe to the following oath: 'I do solemnly swear that I will support the Constitution of the United States of America, and the Constitution of the State of Michigan, and that I will faithfully discharge the duties of the office of teacher according to the best of my ability.' "

Directly beneath this statement plaintiff subscribed her name. The oath was administered by an officer of the school district.

The trial court reluctantly came to the conclusion that the contract was inadmissible for the reason that the jurat of the officer administering the oath, was lacking; and that the oath was not embodied in the contract. He accordingly entered judgment of no cause of action.

Plaintiff, on appeal, claims that she fulfilled all the requirements of the statute; that the oath was administered to her by a school officer as required by statute; that she subscribed the oath as set forth in the very words of the statute; and that the oath was embodied in and made a part of the contract in accordance with the requirements of the statute. Defendant, however, argues that the oath must be executed in the form of an affidavit, and that because of the absence of a jurat it is fatally defective.

This raises the question of whether the jurat of the officer administering the oath was necessary in this case. There is no specific requirement in the statute that the teacher execute an affidavit; and there is a difference between an oath and an affidavit.

An oath is defined in Black's Law Dictionary (2d Ed.):

"Oath. An external pledge or asseveration, made in verification of statements made, or to be made, coupled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party, and to visit him with punishment if they be false."

According to the same authority an affidavit is defined as follows:

"Affidavit. A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath."

The difference between an affidavit and an oath appears to be that an affidavit consists of statement of fact, which is sworn to as the truth, while an oath is a pledge.

In *Connell's Nomination,* 27 Pa. Co. Ct. 305, the court had occasion to pass upon the sufficiency of an oath which was not accompanied by the jurat or verification of the officer who administered it. The case arose upon a rule provided by a political party governing nominations to office. This rule provided:

" 'Before entering upon the discharge of their duties the election officers shall subscribe to an oath or affirmation in the presence of each other in form as follows:

" 'We, ———, do swear or affirm that we will, as officers at the ensuing election, impartially and faithfully perform our duties in accordance with the laws and Constitution of the commonwealth of Pennsylvania, and in accordance with the rules and regulations adopted by the Democratic party of Lackawanna county for the government of said primary elections, to the best of our judgment and ability.

" 'The oath subscribed by the officers shall accompany their return made to the convention.' "

It appeared on the hearing that the election officers, in nearly every instance, signed their names as judge and inspectors to what is styled "Oath of primary election officers," which recites in print that:

" 'We, ———, judge, and ———, inspectors, do solemnly swear that we will, as judge and inspectors,' perform the duties prescribed by and in the language of the rule stated."

The court said, p. 307:

"Aside from this signed statement in print, there is nothing to indicate that an oath or affirmation was

administered to the judge by one of the inspectors, nor by the then qualified judge to the inspectors, as required by the first section of the act of June 29, 1881, Pa. Laws, Act 148, p. 128, which also provides that the judge of election 'may administer the oath to any elector offering to vote as to his qualifications to vote at such election.' "

The court held that the absence of a jurat to such oath raised a presumption that the oath was not taken, but that such presumption could be rebutted by showing that the oath was actually administered, and in passing upon the question, said, p. 308:

"The law enjoins upon the election officers the duty of being severally sworn or affirmed in the presence of each other before entering upon the discharge of their duties, and where a duty is imposed by law and a penalty prescribed for non-observance, an act done in violation of that injunction is nugatory. It must appear affirmatively upon its face that the duty was performed, if the act is evidenced by a paper or by proofs at a hearing, if the act is questioned.

"The fact that the declaratory paper is signed by the judge and inspectors is no evidence that their whole duty was observed, because they act as magistrates when they qualify each other, and as election officers when they subscribe their names to the paper called an oath. They are required to take an oath or affirmation as well as to subscribe thereto, and the taking must appear or be shown as well as the subscribing. The taking of an oath is a magisterial act, while subscribing thereto, though required, is more of a ministerial function. * * *

"Both claimants offered the papers so executed in evidence, but neither questioned the witnesses respecting the administration of the required oath or affirmation. It was stated by counsel during the course of the hearing that there were present in

court election officers, or an election officer, from every election district in the county. The impression made during the whole course of the hearing points to the conclusion and warrants the finding that an oath or affirmation was administered in but few instances by the election officers to and in presence of each other.

"The act is mandatory, and its provision must be complied with strictly.    *    *    *

"It is contended, however, that as the rule provides that the election officers shall subscribe only to an oath or affirmation that they will perform their duties faithfully, before entering upon their discharge, the presumption is that they took the oath or affirmation, and that the taking not being a necessary part of the credential, the holder of the latter is clothed with plenary authority to sit and participate in the convention.

"A certified oath, not required by law to be subscribed, is valid. But a subscribed oath with a presumption that it was taken is an anomaly, and may not be promotive of proper ends.

"The rule declares that not only 'the oath subscribed by the officers shall accompany their return made to the convention,' but also that they shall impartially perform their duties in accordance with the laws of the commonwealth, and the law requires the oath or affirmation to be taken and subscribed prior to the entry upon the discharge of their duties.

"The presumption must fall, because the rule itself requires more than the mere subscribing.

"The credential, with the return of the accompanying oath, taken and subscribed as required by law, and the rule thus read in conformity with law, is the passport which entitles the holder to a seat in the convention.

"The rule in *Contested Election of Owen Cusick,* 136 Pa. 459 (20 Atl. 574, 10 L. R. A. 228), is that the absence of a jurat raises a presumption that the

oath was not taken, which may, however, be rebutted by proof that it was actually administered.''

In *State, ex rel. Dixon,* v. *Van Patten,* 26 Nev. 273 (66 Pac. 822), the supreme court of Nevada had occasion to pass upon a question similar to that before us, relating to an official oath which was not verified by jurat. In that case, a school trustee who was elected to such office took the official oath and subscribed his name thereto before an officer qualified to administer oaths. The officer administering the oath, however, did not affix his jurat to the oath which was subscribed by the school officer. It was claimed that a vacancy existed in the office for the reason that the oath of office had not been taken as required by law. The court, in holding that the school officer had complied with the law, said:

''It was shown that relator was regularly sworn, and took and subscribed to the official oath introduced in evidence in this case, before a duly-appointed and acting notary public of the county, but the jurat of the notary is not authenticated by his official seal. The seal of the officer would have been *prima facie* evidence that the oath had been taken, but was not the only evidence of the fact. It was competent for relator to have shown, as he did show by oral evidence, that the oath was in fact taken. In this connection it is urged that the oath was not indorsed upon the certificate of election. Section 1804, Comp. Laws 1900, requires that the oath shall be indorsed upon the certificate of election and signed by the officer. The substantial purpose of this requirement is the qualification of the officer, by taking and subscribing to the oath, and this was accomplished.''

The rule is clear that the actual taking of such an oath in the nature of a pledge may be shown by evi-

dence on the hearing, where it does not appear by jurat that the oath was administered.

Defendant cites in its brief the case of *Scalf* v. *L'Anse Township Single School District,* 276 Mich. 662, in which this court held that the contract did not comply with the statute and was void *ab initio.* That case, however, can be distinguished from the one before us. In the *Scalf Case,* the statement signed by the teacher did not purport to be a sworn statement and did not follow in any particular the language required by the statute. On its face it was a mere .certificate. Furthermore, it could not be said to be a part of the contract, as required by the statute; it was printed on an entirely separate sheet of paper and thereafter. attached to the contract. Defendant also relies upon *Sauder* v. *District Board of School District No. 10, Township of Royal Oak, Oakland County,* 271 Mich. 413, in which this court held a teacher's contract was void *ab initio* because of its failure to comply with the statute. In the *Sauder Case* the oath was printed on a separate slip of paper. After being signed in duplicate by the teacher, one slip was retained by the school district and one by the teacher. The oath was not attached to the contract. Moreover, the oath was not signed at the time the contract was executed. This court held that it could not be said that such oath had complied with the statute for the reason that it did not follow the mandatory language providing that: " 'At the time of the signing of said contract and any renewal thereof each teacher shall make and subscribe the following oath or affirmation:  *  *  * which shall be embodied in and made a part of said contract.' "

With regard to whether this oath was "embodied in and made a part of said contract," we are obliged to give a reasonable meaning to the language of the

statute setting forth this requirement. It is urged that the contract to be valid must include this oath; that, presumably, according to such argument, between the beginning words of the contract and the signatures of the parties executing it, there must be an oath subscribed somewhere within the various stipulations of the parties. Subscribing such an oath *before* the execution, the contract would be subject to the same objection that is urged in this case—that of subscribing the oath *after* the execution of the contract. The oath cannot be subscribed simultaneously with the execution of the contract. It could not be included as one of the contractual stipulations of the contract, for it is not an agreement made with the other contracting party, but an oath in the nature of a pledge, required by the statute.

The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature as expressed in the statute. *Rapid Railway Co.* v. *Michigan Public Utilities Commission,* 225 Mich. 425 (P. U. R. 1924B, 585); *Gwitt* v. *Foss,* 230 Mich. 8. When the words of a statute are not precise and clear, the construction which is most reasonable and best suited to accomplish the objects of the statute, should be adopted, and a construction leading to an absurd consequence shall be disregarded. *Attorney General* v. *Railway,* 210 Mich. 227. If it can be avoided, the statute will not be given a construction which will create a hardship and injustice. *Attorney General, ex rel. Common Council of the City of Detroit,* v. *Marx,* 203 Mich. 331.

It is clear that the intent of the legislature was to make certain, and exact a guaranty, that teachers in public schools should believe in and support the government and the Constitutions of State and nation; and that the statute aimed to prevent the inculcation of subversive, disloyal and unpatriotic

principles in the minds of school children. With that purpose in mind, it required proof that no teachers in public schools should be employed unless they make a clear and unequivocal statement of their beliefs in this regard by pledging themselves to support the Constitution, and that in order to be certain that such objectives be carried out, the legislature required that the oath be taken at the time such contract with the teacher was entered into; that it be identified with the contract in such a way that there could be no evasion; and that at all times it would be readily ascertainable whether such provisions were carried out at the time the contract was entered into.

With this understanding of the intention of the legislature, and under the rules of statutory construction as set forth in the cases above cited, the oath in this case can be said to be embodied in, and made a part of the contract. Because of the fact that plaintiff took the required oath, which was administered to her by an officer qualified to administer such oaths; because she further subscribed the oath; because the said oath was administered to her on the occasion and at the time when the contract was executed, plaintiff did everything required of her. The oath in question complied with the requirements of the statute in form and substance. The ruling of the trial court, therefore, that the contract was inadmissible because the oath was not embodied therein, and was not verified by jurat of the officer administering the same, was error.

Judgment reversed and new trial granted, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.