AMERICAN TELEPHONE & TELEGRAPH COMPANY *v.*
EMPLOYMENT SECURITY COMMISSION.

### DECISION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—MATERNITY LEAVES OF ABSENCE.
   Orders of circuit court denying unemployment compensation
   benefits to women who were not reemployed following maternity
   leaves of absence are affirmed.

### SEPARATE OPINION.
### DETHMERS and O'HARA, JJ.

2. UNEMPLOYMENT COMPENSATION—JUDICIAL REVIEW OF DETERMINA-
   TIONS.
   *The court, on review of the determination of the appeal board*
   *of the employment security commission, must first determine*

---

### REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 34, 35.
[2–6] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds § 49.
[7] 50 Am Jur, Statutes § 223.
[8] 50 Am Jur, Statutes §§ 235–238.
[9–14] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 34, 35.
Circumstances of abandonment of employment, or nature of excuse
for refusing re-employment, as affecting right to unemployment
compensation. 141 ALR 101, 158 ALR 396.
[15] 2 Am Jur 2d, Administrative Law § 659 *et seq.*
[16] 2 Am Jur 2d, Administrative Law § 650 *et seq.*
[17] 50 Am Jur, Statutes §§ 435–440.
[18, 19] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 34. 35.
[20] 20 Am Jur 2d, Costs § 10.
5 Am Jur 2d, Appeal and Error § 1009.
[21, 22] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 34, 35.
[23] 20 Am Jur, Evidence § 272.
[24] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 34, 35.

*whether the matter for review involves solely a question of law, solely a question of fact, or a compound question of law and fact (CLS 1956, § 421.38).*

3. SAME—JUDICIAL REVIEW OF DETERMINATIONS—QUESTIONS OF LAW.
*The judicial review of determinations of the appeal board of the employment security commission on questions of law. is not limited by the employment security act (CLS 1956, § 421.38).*

4. SAME—JUDICIAL REVIEW OF DETERMINATIONS—CONSTRUCTION OF STATUTES.
*Interpretation of the employment security act by the appeal board of the employment security commission, if reasonable and if it has warrant in the record, may, but need not, be sustained upon judicial review even if the court would have reached a contrary result had the question arisen in the first instance in judicial proceedings (CLS 1956, § 421.38).*

5. SAME—JUDICIAL REVIEW OF DETERMINATIONS—QUESTIONS OF FACT.
*The employment security act requires judicial affirmance of the determinations of the appeal board of the employment security commission if its findings of fact are supported by the great weight of the evidence, in the absence of fraud, and reversal if such findings are contrary to the great weight (CLS 1956, § 421.38).*

6. SAME—SCOPE OF JUDICIAL REVIEW—TELEPHONE OPERATORS—PREGNANCY—LEAVE OF ABSENCE—ASSURANCE OF REEMPLOYMENT.
*Trial judge's finding on certiorari to employment security commission appeal board that claimant telephone operators who had taken leaves of absence because of pregnancies were not entitled to unemployment compensation after signifying readiness to work but denied same because of lack of work held, not without the scope of judicial review, where dominant issue was whether or not the leaves of absence had been granted with an assurance of reemployment, a determination properly made as a matter of law (CLS 1961, § 421.29).*

7. STATUTES—CONSTRUCTION.
*The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature as expressed in the statute.*

8. SAME—WORDS USED IN ORDINARY MEANING.
*Words of a statute are not ordinarily to be construed in a technical sense but as having been used in their ordinary meaning.*

9. UNEMPLOYMENT COMPENSATION—PREGNANCY—LEAVE OF ABSENCE
—ASSURANCE OF REEMPLOYMENT.

> Leave of absence, *as used in section of employment security act
disqualifying an employee for unemployment benefits in case
the unemployment were due to pregnancy, unless the employee
had received a leave of absence, due to pregnancy, must be
construed as defined in the section that a "leave of absence as
used in this section shall mean an authorized absence from
employment with an assurance of reemployment by the employ-
ing unit", it being significant that the collective bargaining
agreement permits, but does not require, reemployment under
the circumstances (CLS 1961, § 421.29).*

10. SAME—PREGNANCY—LEAVE OF ABSENCE—ASSURANCE OF REEM-
PLOYMENT—DEFINITE COMMITMENT.

> *A leave of absence, to be effective as such under the employment
security act provision relative to disqualification for benefits
for unemployment due to pregnancy, must include in it an
affirmative commitment by the employer to reemploy, a com-
mitment which must be sure, certain, and definite (CLS 1961,
§ 421.29).*

11. SAME—PREGNANCY—LEAVE OF ABSENCE—PAST PRACTICE—ASSUR-
ANCE OF REEMPLOYMENT.

> *The fact that on prior occasions women employees who had ob-
tained leaves of absence for pregnancy were later rehired, or
that they were granted unemployment benefits when not rehired
and such awards were not appealed by the employer* held, *not
controlling, where statute clearly requires that there be an
affirmative commitment by the employer to reemploy when the
leave is granted for pregnancy, in order to be an effective leave
of absence as the term is used in the employment security act
(CLS 1961, § 421.29).*

12. SAME—PREGNANCY—LEAVE OF ABSENCE—QUALIFIED COMMITMENT
TO REEMPLOY.

> *An employer's option to reemploy when labor market conditions
permit, cannot be held to alter the plain meaning of statute
clearly providing that employee who is unemployed due to
pregnancy is disqualified from unemployment compensation
benefits unless she had obtained a leave of absence with an
affirmative commitment by the employer to reemploy her (CLS
1961, § 421.29).*

13. Same—Pregnancy—Disqualification for Benefits—Commitment to Reemploy.

    *An employer may reemploy an employee who has been granted a maternity leave, but if her unemployment is due to pregnancy she is disqualified from unemployment compensation benefits unless she comes within the statutory exception that she has obtained a leave of absence coupled with an affirmative commitment on the part of the employer to reemploy her (CLS 1961, § 421.29).*

14. Same—Pregnancy—Disqualification for Benefits—Leave of Absence—Commitment to Reemploy.

    *Evidence adduced in record on appeal from judgment of circuit court denying unemployment compensation benefits to telephone operators who became unemployed due to pregnancy, which showed that employer did not advise any claimant that she would not be reemployed, that each claimant fully expected to be reemployed, and that when work was available no other employee similarly situated as they was ever refused reemployment upon application therefor, but failing to show that the employer ever gave to any of these claimants affirmative assurance of reemployment held, to require as a matter of law, a finding that claimants were disqualified from unemployment compensation benefits, there being an absence of testimony clearly showing the employer to have made an affirmative commitment of reemployment (CLS 1961, § 421.29).*

15. Administrative Law—Judicial Review—Determination of Fact.

    *A court, in reviewing the determination of an administrative agency, may not substitute the court's opinion for that of the agency on a question of fact, where there is support for the determination from facts adduced.*

16. Same—Employment Security Act—Construction of Statutes.

    *The administrative agencies provided for by the employment security act have been entrusted with the major task of administering a most salutary social enactment, but they must do so pursuant to statutorily imposed principles and in accordance with the definitions included within the statute itself.*

17. Statutes—Office of a Proviso.

    *The proper office of a proviso in a statute is to qualify or restrain some preceding general provision.*

18. UNEMPLOYMENT COMPENSATION—PREGNANCY—DISQUALIFICATION FOR BENEFITS—LEAVE OF ABSENCE—COMMITMENT TO REEMPLOY.

*Unemployment compensation was properly denied claimant telephone operators whose unemployment was due to pregnancy, where they had not obtained a leave of absence with a definite commitment for reemployment at termination of the leave and were not reemployed by the employer so as to come within exception to general disqualification for benefits due to pregnancy (CLS 1961, § 421.29).*

19. SAME—PREGNANCY—DISQUALIFICATION FOR BENEFITS—LEAVE OF ABSENCE—APPLICATION FOR REINSTATEMENT BEFORE TERMINATION OF LEAVE.

*Claimant for unemployment benefits who sought reinstatement after pregnancy some 5–1/2 months prior to the termination of the leave of absence which had been granted was not within the proviso in the statute excepting claimants from the disqualification for pregnancy since the application for reinstatement was not made at the termination of the leave (CLS 1961, § 421.29).*

20. COSTS — PUBLIC QUESTION — UNEMPLOYMENT COMPENSATION — PREGNANCY.

*No costs are allowed in proceeding to recover unemployment compensation benefits by telephone operators who sought in vain for reinstatement following maternity leaves of absence, a public question being involved (CLS 1961, § 421.29).*

SEPARATE OPINION.

SMITH and ADAMS, JJ.

21. UNEMPLOYMENT COMPENSATION—PREGNANCY—DISQUALIFICATION FOR BENEFITS.

*An employer's commitment to reemploy an employee who obtains a pregnancy leave of absence must be shown to have been an affirmative commitment, but the test need not be a "sure, certain and definite" one, in order to entitle the employee to unemployment compensation benefits when she is not reemployed at termination of the leave of absence (CLS 1961, § 421.29).*

22. Unemployment Compensation—Leave of Absence—Assurance of Reemployment.

> The term leave of absence, as generally used, does not include an assurance of reemployment, hence definition in employment security act which stated that a leave of absence should "mean an authorized absence from employment with an assurance of reemployment by the employing unit" effectively distinguished leaves of absence with and without an assurance of reemployment (CLS 1961, § 421.29).

23. Same—Leave of Absence—Assurance of Reemployment—Evidence.

> The fact of assurance of reemployment to employee who is granted a leave of absence may be proved as any other fact essential to a claim for unemployment compensation may be proved, if need be by circumstantial evidence (CLS 1961, § 421.29).

24. Same—Telephone Operators—Pregnancy—Leave of Absence—Assurance of Reemployment—Evidence.

> Evidence adduced in record on appeal from judgment of circuit court denying unemployment compensation benefits to telephone operators who became unemployed due to pregnancy held, insufficient to support finding of appeal board of employment security commission that claimants had been given assurances of reemployment upon termination of their leaves of absence (CLS 1961, § 421.29).

Appeals from Ingham; Salmon (Marvin J.), J. Submitted February 4, 1965. (Calendar Nos. 25–28, Docket Nos. 50,450–50,453.) Decided October 4, 1965.

Certiorari by American Telephone & Telegraph Company, against Employment Security Commission, its Appeal Board, and claimant Shirley A. Coleman to review award of unemployment compensation benefits to claimant. Similar actions in respect to awards to claimants Sallie M. Fuller, Hazel V. Messer, and Mary T. Charboneau. Actions heard together in circuit court and combined on

appeal.  Orders entered denying compensation benefits.  Claimants appeal.  Affirmed.

*Cross, Wrock, Miller, Vieson & Kelley* (*William A. Coughlin, Jr.*, of counsel), for plaintiff.

*Zwerdling, Miller, Klimist & Maurer* (*Bruce. A. Miller* and *Joseph R. Wietek*, of counsel), for defendant claimants.

O'HARA, J.  Appellants here are telephone operators employed or formerly employed by appellee-utility.  Each asked for and received a maternity leave of absence.  In each case it was given for a specified period.  Each, at differing times both prior to and upon termination of the leave granted, sought reemployment from appellee.  Each was refused reemployment on the ground of lack of work.  Each filed for employment security benefits.  By administrative determination and redetermination benefits to each were denied.  Each appealed to a referee.  Different referees reached different conclusions, resulting in affirmance or reversal of the commission.  Each claim was appealed to the appeal board.  All claimants were granted benefits by the board.  The employer appealed all cases to the circuit court of Ingham county.  The circuit judge reversed the appeal board in all cases.  All claimants are before us as appellants.

The provision of the Michigan employment security act[1] which controls reads:

"Sec. 29. (1)  An individual shall be disqualified for benefits:   *   *   *

"(d)  For the duration of her unemployment when it is found by the commission that total or partial unemployment is due to pregnancy: Provided, That

---

1 CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).

this provision shall not apply to an individual who has received a leave of absence, due to pregnancy, from her employing unit and applies for reinstatement at the termination of such leave but is not reemployed by such employing unit. Leave of absence as used in this section shall mean an authorized absence from employment with an assurance of reemployment by the employing unit."

Claimant-appellants contend that:

(1) The circuit court exceeded the settled permissible bounds of judicial review of the appeal board's findings.

(2) Each of them received a leave of absence as defined in the statute with an assurance of reemployment.

(3) The appellee-employer acquiesced in the construction of the act which awarded them benefits.

The appellee contends that:

(1) The circuit court's finding was well within the scope of judicial review.

(2) Claimant-appellants did not receive a leave of absence with assurance of reemployment within the meaning of the quoted statute.

(3) It did not acquiesce in a construction of the statute entitling claimant-appellants to benefits.

As previously noted, referees for the commission —lawyers all, who daily hear contested cases under the act—divided as to its construction. Circuit judges, all of whom have had measurable experience in these appeals, were likewise divided. There is no controlling precedent of this Court except as to the varied contentions as to the scope of review. As to this issue we hold that the opinion of Mr. Justice SOURIS in *Wickey* v. *Employment Security Commission,* 369 Mich 487, controls and we do not find that the trial judge offended against it. In fact, the

circuit court demonstrated that he fully apprehended the scope of review in his observation:

"The court does not find any disputed issue here with respect to assurance. but if there are then it must be said that the findings of the appeal board are against the great weight of the evidence."

Judge Salmon considered the real issue to be construction of the statutory phrase *with an assurance of reemployment by the employing unit.* He construed it as a matter of law, as was his duty. It is axiomatic that the overriding consideration in this respect is the determination of legislative intent.

"The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature." (*June* v. *School District No. 11, Southfield Township, Oakland County,* 283 Mich 533, 543 [116 ALR 581].)

It is equally as fundamental that in such determination words are given their ordinary meaning. See *People* v. *Powell,* 280 Mich 699, 703 (111 ALR 721). When the legislature used the phrase "leave of absence," we must presume it was used in its normally accepted meaning. It seems to us that "leave of absence" generally speaking, means a temporary authorized release from one's duty for a stated period with the right or duty to return at the end thereof. If then, as we conclude that is what the phrase connotes in its ordinary meaning, what was the legislative reason for adding "with an assurance of reemployment by the employing unit?" We look first to the statute itself for any significant language of clarification. We think when the legislature included the admonition *"as used in this section,"* it was stating clearly and unequivocally that whatever variations the term might im-

port when used by the military establishment, educational institutions, or any other entity which may grant leaves of absence, the phrase "as used in this section" obligates us to respect the definition specified in the statute. Our coordinate governmental branch tells us that whatever we may think "leave of absence" means, whatever the marines or the University of Michigan might consider it to be, however one of a hundred and one different employers use the term, or how six different dictionaries may define it, "leave of absence" as used in this section of the statute "shall mean an authorized absence from employment with an *assurance* of reemployment by the employing unit." We would be hard put to give to the statute any meaning other than that accorded it by the trial judge.

We think it further significant, as did the trial judge, that the collective bargaining agreement between appellants' duly constituted bargaining agent and appellee recites:

"Except as otherwise stated with respect to leaves of absence for union duties and military leaves, *the granting of a leave without pay does not include the assurance that an employee's position will be available to him at the termination of his leave.* The company *may,* however, reinstate the employee in the same or similar capacity if such a position is available when the employee's leave is terminated." (Art 8, paragraph 8.12) (Emphasis this Court's.)

To this extent then we affirm Judge Salmon's construction of the statute. The variant holdings of the referees, of the appeal board and the different circuit courts of the State are bound hereby. Leave of absence for the purpose of this section of this statute must include in it an affirmative commitment by the employer to reemploy. The commitment in

the words of the trial judge must be "sure, certain and definite."

We turn now to whether in these cases such "sure, certain and definite" assurance of reemployment was given. We decline to accept the "waiver" theory urged by appellants. They contend that because in prior instances they were rehired upon application, and that because certain referee decisions which granted benefits to these claimants and to others similarly situated went unappealed, appellants thereby acquired some manner of vested right to benefits in the instant cases. As noted by appellees in their brief, the facts in the unappealed referee cases might very well have varied from those in the cases at bar, and we may not accept the employer's choice not to appeal them as controlling here. Neither is the "past practice" of rehiring controlling. In discharge for misconduct cases a course of employer conduct might lull employees into the well-founded belief in and reliance upon an employer's interpretation of what constitutes "misconduct." Misconduct is not, as is the involved term here, expressly defined in the statute. Here public policy—the wisdom or efficacy of which cannot be our concern as a Court—imposes a disqualification for benefits when unemployment is "due to pregnancy." There follows the statutorily defined exception in cases of authorized leave with assurance of reemployment. Under the test we have heretofore adopted that such assurance be "sure, certain and definite" an employer option to reemploy, when labor market conditions permit, cannot be held to alter the plain meaning of the statute when it is invoked. The legislature did not inhibit the employer from reemploying an employee granted a maternity leave. It did affirmatively provide for disqualification when her unemployment is due to pregnancy unless the statutory exception obtains.

We must now determine under the interpretation of the statute which we have held reflects the legislative intention, whether there was testimony from which the appeal board could have found as a matter of fact that claimant-appellants received sure, definite and certain assurance of reemployment.

We have combed the record with care. We find abundant testimony that the employer did not advise any claimant-appellant that she would *not* be reemployed. We find abundant testimony that each claimant-appellant fully expected to be reemployed. We find ample testimony to establish that when work was available no other employee similarly situated as claimant-appellants was ever refused reemployment upon application therefor.

Nowhere, however, can we find any testimony that upon application for maternity leave, the employer affirmatively gave to any appellant affirmative assurance of reemployment. None the less, the appeal board so found in the following variations in language:

(Coleman): "It is the practice of employer to reinstate employees absent on a pregnancy leave."

(Fuller): "Claimant had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."

(Messer): "The facts strongly indicate that the claimant had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."

(Charboneau): "On the basis of her past experience with maternity leaves of absence, had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."

In the case of appellant Coleman where the appeal board affirmed the referee without opinion, the finding was a finding of ultimate fact. That fact was that it was the practice of the employer under these circumstances to reemploy. In her case Judge Salmon was eminently correct in holding that this finding of fact was not dispositive of the appeal; that no controlling issue of fact existed, and that only a legal question of statutory interpretation was involved.

In the other 3 cases we have what more properly should be designated legal conclusions from facts. As pointed out by Mr. Justice Dethmers in *George F. Alger Co.* v. *Public Service Commission*, 339 Mich 104, at pp 111, 112:

"Because there is no dispute concerning what external acts defendants carried out,  *  *  *  the commission was not, at that juncture, deciding a question of fact, but, rather, the legal one of what acts are necessary, under the statute, to avoid forfeiture. Hence, there was, in this respect, no substituting of the circuit court's opinion for that of the commission on a question of fact."

That is the precise situation here. The appeal board was deciding the question of what external acts constituted an assurance of reemployment. In this very difficult of delineation area we must carefully distinguish between an administrative body's arriving at a *legal conclusion from adduced facts* and drawing *conclusions or inferences of fact from testimonial facts themselves*. However metaphysical this may sound, the concept must be articulated in decision language because upon that language depends the whole process of adjudication by an administrative body.

We cannot here undertake to make the distinction for every commission, board, or bureau functioning

in every separate area entrusted to its expertise because few, if any, statutes delegating authority to the particular body are identical. Each is a complex of legislative delegation with restrictions, limitations and varying scopes of statutory judicial review. We do undertake here to distinguish between the instances where an administrative body, under the legislative delegation of power is authorized by the terms of the statute to make ultimate conclusions of fact, which conclusions of fact, if testimonially supported, become binding upon courts on review, as opposed to cases such as this where the involved section of the statute includes its own legislatively created legal definition of a term used within the statute. Had the statute in this case entrusted to the commission the right to determine *what* constituted a leave of absence and *what* the incidents of a leave of absence were, any court would be chary of substituting its determination for that of the commission. As Mr. Justice Holmes so incisively held in *Chicago, B. & Q. R. Co.* v. *Babcock,* 204 US 585, 598 (27 S Ct 326, 329, 51 L ed 636):

"Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it [the agency] is the ultimate guardian of certain rights. The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law."

The situation is not in principle different here. In the field of employment security there has been entrusted to the commission the major task of administering a most salutary social enactment. Absent "adoption of wrong principles" in the words of Mr. Justice Holmes, the commission's statutory interpretation should be accorded great weight by the courts. We believe here, however, there was an

"adoption of wrong principle" by this appeal board. The present appeal board faced conflicting circuit court opinions construing the statutory phrase "with an assurance of reemployment." In 1956, the Monroe county circuit court held[2] that the above phrase in no way limited the meaning of the term "leave of absence." Of this decision the appeal board 3 years later (1959) said:

"This appeal board considers that the court's comment on the 'assurance of reemployment' phase in the cited case [Monroe county] implies an interpretation which would render the legislature's definition of leave of absence as stated in section 29(1)(d) vain and fruitless contrary to fundamental principles of statutory interpretation."

This decision was affirmed by the circuit court of Macomb county.

Two years later (1961) in the instant cases, the appeal board reversed itself and readopted the earlier "no restriction" construction. In 1963, Judge Salmon reversed the appeal board's reversal of its prior holding.

Under the foregoing circumstances we admit to some difficulty in applying Justice Holmes' view that the statutory interpretation of the involved administrative agency be given great weight by the courts. We reaffirm here, however, the rule of statutory construction that the proper office of a proviso in a statute is to qualify or restrain some preceding general provision. See *Moeller* v. *Wayne County Board of Supervisors,* 279 Mich 505.

We think the circuit judge here correctly applied the well-settled rules of statutory construction as they had previously been applied by the appeal board and affirmed by the circuit court of Macomb county.

---

[2] Angeline Duvall *v.* Appeal Board, No. 9035.

As to all claimant-appellants, the order of the circuit court reversing the appeal board and affirming the administrative redetermination of the commission disqualifying them for benefits is affirmed for the reasons hereinbefore set out. As to claimant-appellant Coleman, whose application for reinstatement was made 5-1/2 months prior to the termination of the leave of absence granted, we further hold that to come within the proviso in the statute excepting claimants from the disqualification for pregnancy, application for reinstatement must be made as the statute requires "at the termination of such leave."

No costs, a public question being involved.

Dethmers, J., concurred with O'Hara, J.

Kelly and Black, JJ., concurred in result.

Smith, J. (*concurring*). I concur in the opinion of Mr. Justice O'Hara, excepting therefrom, however, that part in which he erects a "sure, certain and definite" test for the fact-finder in determining whether an employing unit has given an employee an "assurance of reemployment" in connection with a pregnancy leave of absence. The statute requires no such evidentiary hurdle and I know of no good reason why one should be supplied. In this connection, I do agree, however, that it is a proper office of construction to say, in this instance, that an "assurance of reemployment" connotes "an affirmative commitment by the employer to reemploy." Beyond that, I would not go. Subject to that reservation, then, I concur.

Adams, J., concurred with Smith, J.

Souris, J. (*concurring*). If, as Mr. Justice O'Hara writes, the term " 'leave of absence', generally speak-

ing, means a temporary authorized release from
one's duty for a stated period with the right or duty
to return at the end thereof", I cannot discern the
logic by which he concludes that the legislature modi-
fied that meaning in any way by expressly defining
"leave of absence", as used in section 29(1)(d) of the
Michigan employment security act,* to mean "an
authorized absence from employment with an as-
surance of reemployment by the employing unit."
It is my opinion that the legislative language we
are obliged to construe effectively distinguished
leaves of absence "with an assurance of reemploy-
ment" and those without such assurance or without,
in Justice O'Hara's language, "the right or duty to
return".

A leave of absence from employment without as-
surance of reemployment is not an anomaly, as it is
suggested to be. In the practical world of commer-
cial and industrial life in which we live, not infre-
quently such leaves are granted by employers and
accepted by employees with potential mutual bene-
fit. The employer may benefit in the event an al-
ready trained and valued employee on such leave is
reemployed. The employee, on the other hand, may
benefit during such leave of absence from continu-
ation of group life and sickness and accident insur-
ance policies and, in the event reemployment occurs,
preservation of accrued pension and seniority rights.
Indeed, the collective bargaining representative of
the claimants herein expressly recognized the prac-
tical fact that such leaves of absence without assur-
ance of reemployment occur in commerce and in-
dustry with some regularity. The union contract
applicable at the time these claims arose, which is
pertinently quoted in Justice O'Hara's opinion, p
280, *supra,* provides that, with only two exceptions,

---

* CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).—Reporter.

unpaid leaves of absence granted by the company do not include an assurance of reemployment. It cannot be doubted that the parties to that contract, had they desired to do so, could have provided, instead, that leaves of absence, at least for pregnancy, do include, automatically, assurances of reemployment. This is not to suggest that their failure to do so, or their choice of the language actually used in the contract, can affect our interpretation of the statutory provision, but I do suggest that the contract as written supports my contention that leaves of absence from employment without assurance of reemployment are not uncommon. The legislature has made it clear that the proviso clause of section 29(1)(d) does not apply to such leaves but only applies to leaves of absence from employment with an assurance of reemployment.

I agree with Mr. Justice Otis M. Smith that the statute does not require proof that the assurance of reemployment was by "sure, certain and definite" commitment. The fact of such assurance may be proved as any other fact essential to a claim may be proved, if need be by circumstantial evidence. As I read this record, however, I do not find even circumstantial evidence to support the appeal board's findings of fact that such assurances of reemployment were given claimants. Hence, I must cast my vote to affirm the circuit judge's reversal of the awards made by the appeal board.

T. M. Kavanagh, C. J., concurred with Souris, J.