376 Mich. 271 (1965)
136 N.W.2d 889
AMERICAN TELEPHONE & TELEGRAPH COMPANY
v.
EMPLOYMENT SECURITY COMMISSION.
Calendar Nos. 25-28, Docket Nos. 50,450-50,453.
Supreme Court of Michigan.
Decided October 4, 1965.
*277 Cross, Wrock, Miller, Vieson & Kelley (William A. Coughlin, Jr., of counsel), for plaintiff.
Zwerdling, Miller, Klimist & Maurer (Bruce A. Miller and Joseph R. Wietek, of counsel), for defendant claimants.
O'HARA, J.
Appellants here are telephone operators employed or formerly employed by appellee-utility. Each asked for and received a maternity leave of absence. In each case it was give for a specified period. Each, at differing times both prior to and upon termination of the leave granted, sought reemployment from appellee. Each was refused reemployment on the ground of lack of work. Each filed for employment security benefits. By administrative determination and redetermination benefits to each were denied. Each appealed to a referee. Different referees reached different conclusions, resulting in affirmance or reversal of the commission. Each claim was appealed to the appeal board. All claimants were granted benefits by the board. The employer appealed all cases to the circuit court of Ingham county. The circuit judge reversed the appeal board in all cases. All claimants are before us as appellants.
The provision of the Michigan employment security act[1] which controls reads:
"Sec. 29. (1) An individual shall be disqualified for benefits: * * *
"(d) For the duration of her unemployment when it is found by the commission that total or partial unemployment is due to pregnancy: Provided, That *278 this provision shall not apply to an individual who has received a leave of absence, due to pregnancy, from her employing unit and applies for reinstatement at the termination of such leave but is not reemployed by such employing unit. Leave of absence as used in this section shall mean an authorized absence from employment with an assurance of reemployment by the employing unit."
Claimant-appellants contend that:
(1) The circuit court exceeded the settled permissible bounds of judicial review of the appeal board's findings.
(2) Each of them received a leave of absence as defined in the statute with an assurance of reemployment.
(3) The appellee-employer acquiesced in the construction of the act which awarded them benefits.
The appellee contends that:
(1) The circuit court's finding was well within the scope of judicial review.
(2) Claimant-appellants did not receive a leave of absence with assurance of reemployment within the meaning of the quoted statute.
(3) It did not acquiesce in a construction of the statute entitling claimant-appellants to benefits.
As previously noted, referees for the commission  lawyers all, who daily hear contested cases under the act  divided as to its construction. Circuit judges, all of whom have had measurable experience in these appeals, were likewise divided. There is no controlling precedent of this Court except as to the varied contentions as to the scope of review. As to this issue we hold that the opinion of Mr. Justice SOURIS in Wickey v. Employment Security Commission, 369 Mich 487, controls and we do not find that the trial judge offended against it. In fact, the *279 circuit court demonstrated that he fully apprehended the scope of review in his observation:
"The court does not find any disputed issue here with respect to assurance, but if there are then it must be said that the findings of the appeal board are against the great weight of the evidence."
Judge Salmon considered the real issue to be construction of the statutory phrase with an assurance of reemployment by the employing unit. He construed it as a matter of law, as was his duty. It is axiomatic that the overriding consideration in this respect is the determination of legislative intent.
"The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature." (June v. School District No. 11, Southfield Township. Oakland County, 283 Mich 533, 543 [116 ALR 581].)
It is equally as fundamental that in such determination words are given their ordinary meaning. See People v. Powell, 280 Mich 699, 703 (111 ALR 721). When the legislature used the phrase "leave of absence," we must presume it was used in its normally accepted meaning. It seems to us that "leave of absence" generally speaking, means a temporary authorized release from one's duty for a stated period with the right or duty to return at the end thereof. If then, as we conclude that is what the phrase connotes in its ordinary meaning, what was the legislative reason for adding "with an assurance of reemployment by the employing unit?" We look first to the statute itself for any significant language of clarification. We think when the legislature included the admonition "as used in this section," it was stating clearly and unequivocally that whatever variations the term might import *280 when used by the military establishment, educational institutions, or any other entity which may grant leaves of absence, the phrase "as used in this section" obligates us to respect the definition specified in the statute. Our coordinate governmental branch tells us that whatever we may think "leave of absence" means, whatever the marines or the University of Michigan might consider it to be, however one of a hundred and one different employers use the term, or how six different dictionaries may define it, "leave of absence" as used in this section of the statute "shall mean an authorized absence from employment with an assurance of reemployment by the employing unit." We would be hard put to give to the statute any meaning other than that accorded it by the trial judge.
We think it further significant, as did the trial judge, that the collective bargaining agreement between appellants' duly constituted bargaining agent and appellee recites:
"Except as otherwise stated with respect to leaves of absence for union duties and military leaves, the granting of a leave without pay does not include the assurance that an employee's position will be available to him at the termination of his leave. The company may, however, reinstate the employee in the same or similar capacity if such a position is available when the employee's leave is terminated." (Art 8, paragraph 8.12) (Emphasis this Court's.)
To this extent then we affirm Judge Salmon's construction of the statute. The variant holdings of the referees, of the appeal board and the different circuit courts of the State are bound hereby. Leave of absence for the purpose of this section of this statute must include in it an affirmative commitment by the employer to reemploy. The commitment in *281 the words of the trial judge must be "sure, certain and definite."
We turn now to whether in these cases such "sure, certain and definite" assurance of reemployment was given. We decline to accept the "waiver" theory urged by appellants. They contend that because in prior instances they were rehired upon application, and that because certain referee decisions which granted benefits to these claimants and to others similarly situated went unappealed, appellants thereby acquired some manner of vested right to benefits in the instant cases. As noted by appellees in their brief, the facts in the unappealed referee cases might very well have varied from those in the cases at bar, and we may not accept the employer's choice not to appeal them as controlling here. Neither is the "past practice" of rehiring controlling. In discharge for misconduct cases a course of employer conduct might lull employees into the well-founded belief in and reliance upon an employer's interpretation of what constitutes "misconduct." Misconduct is not, as is the involved term here, expressly defined in the statute. Here public policy  the wisdom or efficacy of which cannot be our concern as a Court  imposes a disqualification for benefits when unemployment is "due to pregnancy." There follows the statutorily defined exception in cases of authorized leave with assurance of reemployment. Under the test we have heretofore adopted that such assurance be "sure, certain and definite" an employer option to reemploy, when labor market conditions permit, cannot be held to alter the plain meaning of the statute when it is invoked. The legislature did not inhibit the employer from reemploying an employee granted a maternity leave. It did affirmatively provide for disqualification when her unemployment is due to pregnancy unless the statutory exception obtains.
*282 We must now determine under the interpretation of the statute which we have held reflects the legislative intention, whether there was testimony from which the appeal board could have found as a matter of fact that claimant-appellants received sure, definite and certain assurance of reemployment.
We have combed the record with care. We find abundant testimony that the employer did not advise any claimant-appellant that she would not be reemployed. We find abundant testimony that each claimant-appellant fully expected to be reemployed. We find ample testimony to establish that when work was available no other employee similarly situated as claimant-appellants was ever refused reemployment upon application therefor.
Nowhere, however, can we find any testimony that upon application for maternity leave, the employer affirmatively gave to any appellant affirmative assurance of reemployment. None the less, the appeal board so found in the following variations in language:
(Coleman): "It is the practice of employer to reinstate employees absent on a pregnancy leave."
(Fuller): "Claimant had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."
(Messer): "The facts strongly indicate that the claimant had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."
(Charboneau): "On the basis of her past experience with maternity leaves of absence, had reasonable assurance when she commenced her leave that she would resume her work upon the termination of that leave."
*283 In the case of appellant Coleman where the appeal board affirmed the referee without opinion, the finding was a finding of ultimate fact. That fact was that it was the practice of the employer under these circumstances to reemploy. In her case Judge Salmon was eminently correct in holding that this finding of fact was not dispositive of the appeal; that no controlling issue of fact existed, and that only a legal question of statutory interpretation was involved.
In the other 3 cases we have what more properly should be designated legal conclusions from facts. As pointed out by Mr. Justice DETHMERS in George F. Alger Co. v. Public Service Commission, 339 Mich 104, at pp 111, 112:
"Because there is no dispute concerning what external acts defendants carried out, * * * the commission was not, at that juncture, deciding a question of fact, but, rather, the legal one of what acts are necessary, under the statute, to avoid forfeiture. Hence, there was, in this respect, no substituting of the circuit court's opinion for that of the commission on a question of fact."
That is the precise situation here. The appeal board was deciding the question of what external acts constituted an assurance of reemployment. In this very difficult of delineation area we must carefully distinguish between an administrative body's arriving at a legal conclusion from adduced facts and drawing conclusions or inferences of fact from testimonial facts themselves. However metaphysical this may sound, the concept must be articulated in decision language because upon that language depends the whole process of adjudication by an administrative body.
We cannot here undertake to make the distinction for every commission, board, or bureau functioning *284 in every separate area entrusted to its expertise because few, if any, statutes delegating authority to the particular body are identical. Each is a complex of legislative delegation with restrictions, limitations and varying scopes of statutory judicial review. We do undertake here to distinguish between the instances where an administrative body, under the legislative delegation of power is authorized by the terms of the statute to make ultimate conclusions of fact, which conclusions of fact, if testimonially supported, become binding upon courts on review, as opposed to cases such as this where the involved section of the statute includes its own legislatively created legal definition of a term used within the statute. Had the statute in this case entrusted to the commission the right to determine what constituted a leave of absence and what the incidents of a leave of absence were, any court would be chary of substituting its determination for that of the commission. As Mr. Justice Holmes so incisively hold in Chicago, B. & Q.R. Co. v. Babcock, 204 US 585, 598 (27 S Ct 326, 329, 51 L ed 636):
"Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it [the agency] is the ultimate guardian of certain rights. The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law."
The situation is not in principle different here. In the field of employment security there has been entrusted to the commission the major task of administering a most salutary social enactment. Absent "adoption of wrong principles" in the words of Mr. Justice Holmes, the commission's statutory interpretation should be accorded great weight by the courts. We believe here, however, there was an *285 "adoption of wrong principle" by this appeal board. The present appeal board faced conflicting circuit court opinions construing the statutory phrase "with an assurance of reemployment." In 1956, the Monroe county circuit court held[2] that the above phrase in no way limited the meaning of the term "leave of absence." Of this decision the appeal board 3 years later (1959) said:
"This appeal board considers that the court's comment on the `assurance of reemployment' phase in the cited case [Monroe county] implies an interpretation which would render the legislature's definition of leave of absence as stated in section 29(1)(d) vain and fruitless contrary to fundamental principles of statutory interpretation."
This decision was affirmed by the circuit court of Macomb county.
Two years later (1961) in the instant cases, the appeal board reversed itself and readopted the earlier "no restriction" construction. In 1963, Judge Salmon reversed the appeal board's reversal of its prior holding.
Under the foregoing circumstances we admit to some difficulty in applying Justice Holmes' view that the statutory interpretation of the involved administrative agency be given great weight by the courts. We reaffirm here, however, the rule of statutory construction that the proper office of a proviso in a statute is to qualify or restrain some preceding general provision. See Moeller v. Wayne County Board of Supervisors, 279 Mich 505.
We think the circuit judge here correctly applied the well-settled rules of statutory construction as they had previously been applied by the appeal board and affirmed by the circuit court of Macomb county.
*286 As to all claimant-appellants, the order of the circuit court reversing the appeal board and affirming the administrative redetermination of the commission disqualifying them for benefits is affirmed for the reasons hereinbefore set out. As to claimant-appellant Coleman, whose application for reinstatement was made 5-1/2 months prior to the termination of the leave of absence granted, we further hold that to come within the proviso in the statute excepting claimants from the disqualification for pregnancy, application for reinstatement must be made as the statute requires "at the termination of such leave."
No costs, a public question being involved.
DETHMERS, J., concurred with O'HARA, J.
KELLY and BLACK, JJ., concurred in result.
SMITH, J. (concurring).
I concur in the opinion of Mr. Justice O'HARA, excepting therefrom, however, that part in which he erects a "sure, certain and definite" test for the fact-finder in determining whether an employing unit has given an employee an "assurance of reemployment" in connection with a pregnancy leave of absence. The statute requires no such evidentiary hurdle and I know of no good reason why one should be supplied. In this connection, I do agree, however, that it is a proper office of construction to say, in this instance, that an "assurance of reemployment" connotes "an affirmative commitment by the employer to reemploy." Beyond that, I would not go. Subject to that reservation, then, I concur.
ADAMS, J., concurred with SMITH, J.
SOURIS, J. (concurring).
If, as Mr. Justice O'HARA writes, the term "`leave of absence', generally speaking, *287 means a temporary authorized release from one's duty for a stated period with the right or duty to return at the end thereof", I cannot discern the logic by which he concludes that the legislature modified that meaning in any way by expressly defining "leave of absence", as used in section 29(1)(d) of the Michigan employment security act,[*] to mean "an authorized absence from employment with an assurance of reemployment by the employing unit." It is my opinion that the legislative language we are obliged to construe effectively distinguished leaves of absence "with an assurance of reemployment" and those without such assurance or without, in Justice O'HARA'S language, "the right or duty to return".
A leave of absence from employment without assurance of reemployment is not an anomaly, as it is suggested to be. In the practical world of commercial and industrial life in which we live, not infrequently such leaves are granted by employers and accepted by employees with potential mutual benefit. The employer may benefit in the event an already trained and valued employee on such leave is reemployed. The employee, on the other hand, may benefit during such leave of absence from continuation of group life and sickness and accident insurance policies and, in the event reemployment occurs, preservation of accrued pension and seniority rights. Indeed, the collective bargaining representative of the claimants herein expressly recognized the practical fact that such leaves of absence without assurance of reemployment occur in commerce and industry with some regularity. The union contract applicable at the time these claims arose, which is pertinently quoted in Justice O'HARA'S opinion, p 280, supra, provides that, with only two exceptions, *288 unpaid leaves of absence granted by the company do not include an assurance of reemployment. It cannot be doubted that the parties to that contract, had they desired to do so, could have provided, instead, that leaves of absence, at least for pregnancy, do include, automatically, assurances of reemployment. This is not to suggest that their failure to do so, or their choice of the language actually used in the contract, can affect our interpretation of the statutory provision, but I do suggest that the contract as written supports my contention that leaves of absence from employment without assurance of reemployment are not uncommon. The legislature has made it clear that the proviso clause of section 29(1)(d) does not apply to such leaves but only applies to leaves of absence from employment with an assurance of reemployment.
I agree with Mr. Justice OTIS M. SMITH that the statute does not require proof that the assurance of reemployment was by "sure, certain and definite" commitment. The fact of such assurance may be proved as any other fact essential to a claim may be proved, if need be by circumstantial evidence. As I read this record, however, I do not find even circumstantial evidence to support the appeal board's findings of fact that such assurances of reemployment were given claimants. Hence, I must cast my vote to affirm the circuit judge's reversal of the awards made by the appeal board.
T.M. KAVANAGH, C.J., concurred with SOURIS, J.
NOTES
[1] CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).
[2] Angeline Duvall v. Appeal Board, No. 9035.
[*] CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).  REPORTER.